Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Karena K. Ioannou (5675863)
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391

Brian Igel (BI 4574)
bigel@bilawfirm.com
BELLIZIO + IGEL PLLC
One Grand Central Place
305 Madison Avenue, 40th Floor
New York, New York 10165
Telephone:     (212)873-0250
Facsimile:     (646)395-1585
*Attorneys for Plaintiff*
*Off-White LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OFF-WHITE LLC, | **21-cv-9610 (AKH)** |
| *Plaintiff* | |
| v. | **[PROPOSED]** |
| | **PRELIMINARY** |
| AMY COTTAGE STORE, CONTACT US HIGH-END TREASURES STORE, CONTACT US STORE, DONGGUAN CITY CHINER INDUSTRIAL COMPANY LIMITED, DONGGUAN GUORUI TRADING CO., LTD., DONGGUAN SMART GIFTS CO., LTD., FUZHOU OULILANG TRADING CO., LTD., FUZHOU PORPHYRIN PORPHYRIN TRADING CO., LTD., FUZHOU XIANGXING TEXTILE CO., LTD., GUANGZHOU CHENXI TRADING CO., LTD., GUANGZHOU HUASHENG XISHI TRADE LTD., GUANGZHOU LUOSI INTERNATIONAL TRADING CO., LTD., | **INJUNCTION ORDER** |

GUANGZHOU MAX SHINE ELECTRONIC TECHNOLOGY CO., LTD., GUANGZHOU YIPIN ELECTRONIC TECHNOLOGY CO., LTD., HANGZHOU LIN'AN ORIGIN TRADING CO., LTD., HAOWU ANIME STORE, HUGUAN COUNTY SUOXIN TRADING CO., LTD., IINS TRENDY STORE, JINHUA SHENGCHEN CRAFT CO., LTD., KULAK CYCLE STORE, NAN'AN XI MEI SHAI PO TRADING FIRM, NANJING DAYWIN INDUSTRY AND COMMERCIAL CO., LTD., QUANZHOU PULISI TRADING CO., LTD., QUANZHOU TAOZUI ELECTRONIC COMMERCE CO., LTD., SHANGHAI TIANJIA INDUSTRIAL CO., LTD., SHANTOU ENHONG CLOTHING CO., LTD., SHENZHEN DEKAI CRAFTS CO., LTD., SHENZHEN GIANTIDEA TECHNOLOGY CO., LTD., SHENZHEN HUANYU LANYARD CO., LTD., SHENZHEN JU SHELL HUI TECHNOLOGY CO., LTD., SHENZHEN JUSHENG ELECTRONIC COMMERCE CO., LTD., SHENZHEN POETRY E-COMMERCE CO., LTD., SHENZHEN SIRUIL TECHNOLOGY CO., LTD., SHENZHEN YIMEIJIA IMPORT AND EXPORT TRADE CO., LTD., SHENZHEN YIYIXING ZIPPER MANUFACTURE CO., LTD., SHOP3659058 STORE, YIWU CHANGYUAN TRADE CO., LTD., YIWU CORA TRADE CO., LTD., YIWU MERFONS IMPORT AND EXPORT CO., LTD., YIWU SHUNHAI GARMENT CO., LTD., YIWU XIANGXING WEIYE INDUSTRY AND TRADE CO., LTD., YIWU XINXING JEWELRY CO., LTD., ZHENGZHOU BLACKWELL CLOTHING CO., LTD., and ZHONGSHAN HONGYANG TRADE CO., LTD.,

*Defendants*

**GLOSSARY**

| Term | Definition |
| --- | --- |
| **Plaintiff or Off-White** | Off-White LLC |
| **Defendants** | Amy Cottage Store, Contact us high-end treasures Store, Contact Us Store, Dongguan City Chiner Industrial Company Limited, Dongguan Guorui Trading Co., Ltd., Dongguan Smart Gifts Co., Ltd., Fuzhou Oulilang Trading Co., Ltd., Fuzhou Porphyrin Porphyrin Trading Co., Ltd., Fuzhou Xiangxing Textile Co., Ltd., Guangzhou Huasheng Xishi Trade Ltd., Guangzhou Luosi International Trading Co., Ltd., Guangzhou Max Shine Electronic Technology Co., Ltd., Guangzhou Yipin Electronic Technology Co., Ltd., Hangzhou Lin'an Origin Trading Co., Ltd., HaoWu Anime Store, Huguan County Suoxin Trading Co., Ltd., iins Trendy Store, Jinhua Shengchen Craft Co., Ltd., Kulak Cycle Store, Nan'an Xi Mei Shai Po Trading Firm, Nanjing Daywin Industry And Commercial Co., Ltd., Quanzhou Pulisi Trading Co., Ltd., Quanzhou Taozui Electronic Commerce Co., Ltd., Shanghai Tianjia Industrial Co., Ltd., Shantou Enhong Clothing Co., Ltd., Shenzhen Dekai Crafts Co., Ltd., Shenzhen Giantidea Technology Co., Ltd., Shenzhen Huanyu Lanyard Co., Ltd., Shenzhen Ju Shell Hui Technology Co., Ltd., Shenzhen Jusheng Electronic Commerce Co., Ltd., Shenzhen Poetry E-Commerce Co., Ltd., Shenzhen Siruil Technology Co., Ltd., Shenzhen Yimeijia Import And Export Trade Co., Ltd., Shenzhen Yiyixing Zipper Manufacture Co., Ltd., Yiwu Changyuan Trade Co., Ltd., Yiwu Cora Trade Co., Ltd., Yiwu Merfons Import And Export Co., Ltd., Yiwu Shunhai Garment Co., Ltd., Yiwu Xiangxing Weiye Industry And Trade Co., Ltd., Yiwu Xinxing Jewelry Co., Ltd., Zhengzhou Blackwell Clothing Co., Ltd., and Zhongshan Hongyang Trade Co., Ltd. |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail |

| | products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
|---|---|
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Abloh Dec.** | Declaration of Virgil Abloh in Support of Plaintiff's Application |
| **Ioannou Dec.** | Declaration of Karena K. Ioannou in Support of Plaintiff's Application |
| **Off-White Products** | A young, successful luxury fashion label founded by American creative designer Virgil Abloh, specializing in men's and women's lifestyle and high-end streetwear, as well as shoes, accessories, jewelry, homeware and other ready-made goods |
| **Off-White Registrations** | U.S. Trademark Registration Nos.: 5,119,602 for "OFF WHITE" for a variety of goods in Class 25 with a constructive date of first use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25; 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9; 5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25; 5,710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14; 5,150,712 for  for a variety of goods in Class 18 and 25; 5,710,288 for  for a variety of goods in Class 14; 5,307,806 for  for a variety of goods in Class 18 and 25; 6,303,583 for  for a variety of goods in Class 25; 5,835,552 for  for a variety of goods in Class 9; 5,387,983 for  for |

| | |
|---|---|
| | a variety of goods in Class 25; 5,445,222 for  for  a variety of goods in Class 25; 5,800,414 for  for a variety of goods in Class 9 and 25; 5,681,805 for  for a variety of goods in Class 9; 5,663,133 for  for a variety of goods in Class 25; 6,054,044 for  for a variety of goods in Class 25; 6,272,565 for  for a variety of goods in Class 25; 6,290,768 for  for a variety of goods in Class 25; 6,114,562 for  for a variety of goods in Class 25;   6,131,346 for  for a variety of goods in Class 18; 6,035,585 for  for a variety of goods in Class 25; 6,137,880 for  for a variety of goods in Class 25; and 6,505,708 for  for a variety of goods in Class 14 |
| **Off-White Application** | U.S. Trademark Serial Application No. 88/041,456 for , for a variety of goods in Class 18 and Class 25 |
| **Off-White Marks** | The Marks covered by the Off-White Registrations and Off-White Application |
| **Counterfeit Products** | Products bearing or used in connection with the Off-White Marks, and/or products in packaging and/or containing labels bearing the Off-White Marks, and/or bearing or used in connection with marks that are confusingly similar to the Off-White Marks and/or products that are identical or confusingly similar to the Off-White Products |

| Infringing Listings | Defendants' listings for Counterfeit Products |
|---|---|
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

WHEREAS, Plaintiff having moved *ex parte* on November 19, 2021 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on November 23, 2021 ("TRO") which ordered Defendants to appear on December 7, 2021 at 10:30 a.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on December 1, 2021, Plaintiff filed a request for modification and extension of the TRO;

WHEREAS, the Court granted Plaintiff's request and entered an Order on December 2, 2021 ("December 2, 2021 Order") extending the TRO until December 16, 2021 and rescheduling the Show Cause Hearing to December 16, 2021 at 2:30 p.m.;

WHEREAS, on December 8, 2021, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application and the December 2, 2021 Order on each and every Defendant except Shop3659058 Store;

WHEREAS, on December 13, 2021, the Court entered an Order rescheduling the Show Cause Hearing to December 16, 2021 at 4:30 pm and providing dial-in instructions ("December 13, 2021 Order");

WHEREAS, on December 14, 2021, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served December 13, 2021 Order on all defendants, except Guangzhou Chenxi Trading Co., Ltd. and Shop3659058 Store;

WHEREAS, on December 16, 2021 at 4:30 p.m., Plaintiff appeared at the Show Cause Hearing, however, no Defendants appeared.

THE COURT FINDS THE FOLLOWING:

A.      Off-White, launched in or about 2013, is the owner of a young, successful and high-end lifestyle streetwear line of men's and women's apparel, as well as accessories, jewelry, homeware and other ready-made goods which are distributed through various channels of trade in the United States and abroad. The Off-White Products are marketed under the trademarks Off-White™ and Off- White c/o Virgil Abloh™.  The Off-White Brand is recognized for  its distinctive graphic and logo-heavy designs, specifically a unique design mark comprised of alternating parallel diagonal lines and a unique design mark comprised of two intersecting dual-sided arrows.  Since at least as early as 2013, the Off-White Diagonal Design has been, and currently still is, applied to the Off-White Products themselves, and since at least as early as 2016, the Off-White Arrow Design has been, and currently still is, applied to the Off-White Products themselves.  The Off-White Trade Dress is also applied to tags, labels, containers, packaging and displays for the Off-White Products;

B.      While Off-White has gained significant common law trademark and other rights in its Off-White Marks and Off-White Products through use, advertising and promotion, Off-White also protected its valuable rights by filing for and obtaining federal trademark registrations. For example, Off-White owns the following U.S. Trademark Registration Nos.: 5,119,602 for "OFF WHITE" for a variety of goods in Class 25 with a constructive date of first use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25; 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9; 5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25; 5,710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14; 5,150,712 for  for a variety of goods

in Class 18 and 25; 5,710,288 for  for a variety of goods in Class 14; 5,307,806 for  for a

variety of goods in Class 18 and 25; 6,303,583 for  for a variety of goods in Class

25; 5,835,552 for  for a variety of goods in Class 9; 5,387,983 for  for a variety of

goods in Class 25; 5,445,222 for  for a variety of goods in Class 25; 5,800,414 for 

for a variety of goods in Class 9 and 25; 5,681,805 for  for a variety of goods in Class 9;

5,663,133 for  for a variety of goods in Class 25; 6,054,044 for  for a variety of

goods in Class 25; 6,272,565 for  for a variety of goods in Class 25; 6,290,768 for

 for a variety of goods in Class 25; 6,114,562 for  for a variety of goods

in Class 25;   6,131,346 for  for a variety of goods in Class 18; 6,035,585 for 

for a variety of goods in Class 25; 6,137,880 for  for a variety of goods

in Class 25; and 6,505,708 for  for a variety of goods in Class 14. Off-White also owns

U.S. Trademark Serial Application No. 88/041,456 for , for a variety of goods in Class 18

3

and Class 25. The Off-White Marks are currently in use in commerce in connection with the Off-White Products;

C.    The success of the Off-White Products is due in part to Off-White's marketing and promotional efforts. These efforts include advertising and promotion through social media, Off-White's website (available at https://www.off---white.com/en/US), retailer websites and other internet-based and print advertising, among other efforts domestically and abroad, including in New York. Off-White's success is also due to its use of high-quality materials and processes in making the Off-White Products. Additionally, Off-White owes a substantial amount of the success of the Off-White Products to its consumers and word-of-mouth buzz that its consumers have generated. Off-White's efforts, the quality of its Off-White Products, its marketing, promotions and distribution efforts, as well as the word-of mouth-buzz generated by its consumers, have made the Off-White Products and Off-White Marks prominently placed in the minds of the public. Retailers, retail buyers, consumers and members of the public have become familiar with the Off-White Products and Off-White Marks and associate them exclusively with Off-White. As a result of such associations, Off-White and its Off-White Marks have acquired a valuable reputation and goodwill among the public;

D.    Off-White has gone to great lengths to protect its interests in and to the Off-White Products and Off-White Marks.  No one other than Off-White is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Off-White Marks without the express written permission of Off-White;

E.    Alibaba and AliExpress are online marketplace and e-commerce platforms which allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise,

offer for sale, sell and ship their wholesale and retail products originating from China to consumers worldwide and specifically to consumers residing in the U.S., including New York;

F.      Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and Merchant Storefronts on Alibaba and/or AliExpress as well as potential yet undiscovered additional online marketplace platforms. Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world. Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale;

G.      Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts;

H.      Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Off-White Products or to use the Off-White Marks, or any marks that are confusingly similar to the Off-White Marks. Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Off-White Products, only with minor variations that no ordinary consumer would recognize;

5

I.      During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York;

J.      Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Off-White Marks and Off-White Products;

K.      Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff;

L.      Off-White is likely to prevail on its Lanham Act claims and related state law claims at trial;

M.      As a result of Defendants' infringements, Off-White is likely to suffer an immediate and irreparable injury if a preliminary injunction order is not granted;

N.      The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a preliminary injunction order is not issued is

far outweighed by the potential harm to Off-White, its business and the goodwill and reputation built up in and associated with the Off-White Marks if a preliminary injunction order is not issued;

    O.    The public interest favors issuance of the preliminary injunction order in order to protect Off-White's interests in and to its Off-White Marks, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Off-White Products;

    P.    Defendants were served with copies of the TRO, together with the Summons and Complaint, and all papers filed in support of Off-White's Application seeking the TRO via electronic means pursuant to the terms of the TRO;

    Q.    No Defendants have filed a response in opposition to Off-White's request for entry of a preliminary injunction or have otherwise formally appeared in this case; and

    R.    Accordingly, this Court, having determined that it has subject matter jurisdiction over the claims and personal jurisdiction over Defendants, finds that entry of a preliminary injunction order is necessary and appropriate.

## <u>ORDER</u>

1. Plaintiff is entitled to injunctive relief through the pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

    a)    Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

        i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in

Counterfeit Products or any other products bearing one or more of the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of the Off-White Marks;

ii.   directly or indirectly infringing in any manner any of Plaintiff's Off-White Marks;

iii.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Off-White Marks to identify any goods or services not authorized by Plaintiff;

iv.   using any of Plaintiff's Off-White Marks or any other marks that are confusingly similar to the Off-White Marks on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

v.    using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

vi.   secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any

computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

vii.   effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

viii.   knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) above and 1(b)(i) through 1(b)(ii) and 1(c)(i) below.

b)   Accordingly, the Third Party Service Providers and Financial Institutions are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

i.   secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

ii.   secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records,

documents or any other records or evidence relating to the Defendants' User Accounts, Merchant Storefronts, Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

    iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) and 1(b)(i) through 1(b)(ii) above and 1(c)(i) below.

c) Accordingly, the Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. providing services to Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

    ii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii), 1(b)(i) through 1(b)(ii) and 1(c)(i) above.

2. As sufficient cause has been shown, Plaintiff is entitled to an asset restraint through the pendency of this litigation, including that:

a) within seven (7) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying

information for Defendants and Defendants' User Accounts, contact information for Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

3. As sufficient cause has been shown, Plaintiff is entitled to expedited discovery through the pendency of this litigation, including that:

   a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

   b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order, their respective officers, employees, agents, servants and attorneys and all persons in active concert or participation with any of them who receive actual notice of this Order shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

   c) Plaintiff may serve subpoenas on all Financial Institutions who receive service of this Order to provide Plaintiff's counsel with all documents and records in their possession, custody or control (whether located in the U.S. or abroad), relating to any and all of Defendants' Financial Accounts, User Accounts and Merchant Storefronts, including, but not limited to, documents and records relating to:

      i.   account numbers;

      ii.  current account balances;

iii.    any and all identifying information for Defendants and Defendants' User Accounts, including names, addresses and contact information;

iv.    any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

v.    any and all deposits and withdrawal during the previous year from each and every of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements;

vi.    any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number;

vii.    any and all User Accounts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts that Defendants have ever had and/or currently maintain;

viii.    the identities, location and contact information, including any and all e-mail addresses, of Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them;

ix.    the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts, a full

accounting of Defendants' sales history and listing history under such accounts, and Defendants' Financial Accounts associated with Defendants' User Accounts; and

    x.   Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of the Off-White Marks.

d)  Plaintiff may serve subpoenas on all Third Party Service Providers to provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

    i.   any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers;

    ii.   the identities, location and contact information, including any and all e-mail addresses of Defendants;

    iii.   the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history

and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

iv.   Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing one or more of the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Off-White Marks.

4.   As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendants if it is completed by one of the following means:

a)   delivery of: (i) PDF copy of this Order, or (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this Order to Defendants' e-mail addresses to be determined after having been identified by Alibaba and/or AliExpress pursuant to Paragraph V(C) of the TRO; or

b)   delivery of a message to Defendants through the system for communications established by the Third Party Service Providers on their respective platforms, providing a link to a secure website (such as NutStore or a large mail link created through Rmail.com) where each Defendant will be able to download a PDF copy of this Order.

5.   As sufficient cause has been shown, that such alternative service by electronic means

ordered herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

6. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

   a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to EE Omaha Legal Specialist at EEOMALegalSpecialist@paypal.com;

   b) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where AliPay.com Co., Ltd., Ant Financial Services will be able to download a PDF copy of this Order via electronic mail Mr. Di Zhang, Member of the Legal & Compliance Department – IP, at di.zd@alipay.com;

   c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba will be able to download a PDF copy of this Order via electronic mail to Chloe He, Alibaba Group at chloe.he@alibaba-inc.com;

   d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and Edward Tulin, counsel for Payoneer Inc., at Edward.Tulin@skadden.com; and

   e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal@pingpongx.com.

7. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

8. The $15,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

9. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

10. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this __20th__ day of __December__, 2021, at __3:30_____ _p_.m.
New York, New York

_____ /s/ Alvin K. Hellerstein_____
HON. ALVIN K. HELLERSTEIN
UNITED STATES DISTRICT JUDGE